**Kenneth W. GENTILE, Appellant,**

v.

**MISSOURI DEPARTMENT OF CORRECTIONS AND HUMAN RESOURCES; Callaway County Hospital; Dick Moore; Myrna E. Trickey; Bill Armontrout; Don Cline, III, Supt.; Larry Henson; Bill Rutledge; Macarthur Woodruff; Mr. Acree; Gerald Bommel; John Sydow; Dr. Robert H. Drennon; Harold Hyman, Manager II; Danny Kliethermes, Correctional Officer I; Ruth Eddy, Caseworker; M. Butts, R.N.; Pat Farrity, Sgt.; Fred Counterman, M.A., II; J.F. Carbone, Doctor; L. Shulte, R.N.; Ann M. Mericle, Health Care Coordinator; Doctor Ivins; and Central Pharmacy, D.O.C., Appellees.**

No. 92–1777.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 25, 1992.

Decided Feb. 9, 1993.

Rehearing Denied March 11, 1993.

Kenneth W. Gentile, pro se.

Christine A. Alsop, Asst. Atty. Gen., Jefferson City, MO, for appellees.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Kenneth Wayne Gentile appeals a grant of summary judgment for the defendants, the Missouri Department of Corrections and others associated with it. The District Court held that there were no genuine issues of material fact and that the defen-

dants were entitled to judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure. We agree with the judgment in its entirety, though we feel constrained to disapprove some aspects of the procedure followed below.

## I.

Kenneth Wayne Gentile is a prisoner in the custody of the Missouri Department of Corrections. He filed this 42 U.S.C. § 1983 complaint on July 20, 1989, claiming that various employees of the Missouri Department of Corrections and related institutions were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, as made applicable to the States by the Due Process Clause of the Fourteenth Amendment. Gentile presented his complaint to the District Court *pro se* and filed a motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, on July 27, 1989.

The District Court designated a magistrate judge under 28 U.S.C. § 636 to hear pre-trial issues and make proposed findings of fact and conclusions of law on the merits. The magistrate judge conducted three hearings. After the first hearing, held on September 1, 1989, Gentile was granted leave to proceed *in forma pauperis*. No transcript of the second hearing, held on October 17, exists. After the third hearing, on November 8, the magistrate judge recommended that the claims against two of the defendants be dismissed as frivolous. On July 30, 1990, the magistrate judge recommended that summary judgment be granted for the remaining defendants. The District Court adopted both recommendations. Gentile appealed.

We remanded the cause to the District Court for further consideration in light of our decision in *Dowdy v. Bennett*, No. 90–2887, 989 F.2d 506 (8th Cir. June 25, 1991). *Gentile v. Missouri Department of Corrections*, 953 F.2d 647 (8th Cir.1991); In *Dowdy* we held that procedures used by the magistrate judge, similar to the ones used in this case, did not conform to the Federal Rules of Civil Procedure or Section 1915(d). There, the magistrate judge made his own investigation of Dowdy's allegations, collecting evidence and interviewing witnesses. He held conferences with the plaintiff and some or all of the defendants. Only an informal record was kept. The magistrate judge then dismissed Dowdy's complaint as frivolous under Section 1915(d). *Dowdy v. Bennett, supra,* at 3. The magistrate judge took all of these steps without formally granting or denying Dowdy leave to proceed *in forma pauperis.*

On remand in the present case, the District Court held that while the magistrate judge had conducted conferences in some ways like those we disapproved in *Dowdy*, the case was decided on the merits, through the grant of summary judgment for the defendants, rather than dismissed as frivolous under Section 1915(d). The Court further distinguished this case from *Dowdy* on the ground that Gentile was granted leave to proceed *in forma pauperis*. Finally, the District Court found that all of the conferences held by the magistrate judge "were adversary in nature, and summary judgment was [properly] based upon the motions and affidavits." *Gentile v. Missouri Department of Corrections and Human Resources*, No. 89–4312–CV–C–5, slip op. 1–2 (W.D.Mo. March 27, 1992). Judgment for defendants was reinstated, and Gentile again appeals.

## II.

To place the issues in context, we first describe our holdings in *Dowdy*. One holding had to do with the timing of a District Court's actions in cases brought under 28 U.S.C. § 1915. We said:

We now make clear that all prisoner complaints which are provisionally filed under 28 U.S.C. § 1915 should be immediately reviewed by the magistrate or district court for possible dismissal under section 1915(d) before service of process on the respondent. Thereafter if the complaint is not deemed frivolous the issue should be deemed joined for decision on the legal or factual questions involved.

*Id.* at 3–4 (quoting *Williams v. White,* 897 F.2d 942, 944 n. 1 (8th Cir.1990)).

■ Whether leave to proceed *in forma pauperis* should be granted is to be decided initially on the basis of the complaint, before issuance and service of process. "Determination of the question of leave to proceed in forma pauperis under 28 U.S.C. § 1915 should precede both issuance and service of process." *In re Funkhouser,* 873 F.2d 1076, 1077 (8th Cir. 1989). If the complaint is frivolous or malicious, it should be dismissed out of hand. If the complaint is not frivolous or malicious, *in forma pauperis* status should be granted, and process issued and served. See also *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The case should then proceed under the Federal Rules of Civil Procedure as any paid complaint does, except that if the Court becomes convinced at any time that the complaint is frivolous or malicious, it may revoke *in forma pauperis* status and dismiss the complaint under 28 U.S.C. § 1915(d).

This procedure was not followed in the present case. A decision on *in forma pauperis* status was not made until the first hearing before the magistrate judge, on September 1, 1989. This determination should have been made on the basis of the complaint. However, this error of timing was harmless in this case, because later, after the grant of *in forma pauperis* status, defendants moved for summary judgment, which was granted. The real issue is whether summary judgment was properly granted, and this issue would still have to be faced even if the matter of *in forma pauperis* status had been handled correctly.

The procedure followed here also ran afoul of another holding in *Dowdy.* We said:

The magistrate investigated the allegations in the complaints and conducted his own interviews to determine whether the complaint stated a claim for relief. As we have pointed out in earlier cases, this procedure is not in accord with the Federal Rules of Civil Procedure or with section 1915(d).

*Dowdy,* slip op. 3. We disapproved not only the timing of the magistrate judge's decision, but also the investigative procedure used. Section 1915 provides that once a plaintiff has been granted leave to proceed *in forma pauperis:*

(c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

■ In *Dowdy* we held that the magistrate judge's procedure of personally investigating complaints caused "delay and unnecessary expenditure of judicial energy." Slip op. 4. We also held that it "deprive[d] the petitioner of the benefit of a record from which he can base a proper appeal for review by both the district court and this court." *Id.* Personal investigation of a case is beyond the scope of the magistrate judge's function. The fact that one of the parties is indigent within the meaning of Section 1915 does not mean that the participants at trial are to perform different duties from those they would perform if the plaintiff had been able to pay his filing fee. The goal of Section 1915 is to put the "indigent plaintiffs on a similar footing with paying plaintiffs." *Neitzke v. Williams, supra,* 490 U.S. at 330, 109 S.Ct. at 1834.

■ When considering a prisoner's petition challenging the conditions of his confinement, a magistrate judge is authorized to conduct hearings, including evidentiary hearings, and to submit to the district judge proposed findings of fact and conclusions of law for the disposition of the case. 28 U.S.C. § 636(b)(1). However, conducting independent, *ex parte* investigations, including interviews with one or more witnesses, is not within a judge's powers.

What happened here was not infected by all of the infirmities we described in *Dowdy.* Each of the three hearings was on the record. We have the transcripts of the first and third hearings. The second hear-

ing has not been transcribed, but the District Court's docket sheet indicates the presence of an electronic recorder operator, so presumably it would be possible to get a transcript. Neither party has bothered to have one prepared, or to ask that one be prepared at public expense, see 28 U.S.C. § 753(f), so we can safely assume that nothing material happened at the second hearing. Moreover, there have been no *ex parte* communications with the magistrate judge. The plaintiff was present at all three hearings, and so were counsel for defendants. But serious procedural irregularities did occur.

The first hearing was virtually formless. No witnesses were sworn. The magistrate judge simply began questioning the plaintiff. From time to time counsel for defendants would ask questions, but not according to any regular form or order. The magistrate judge appeared to be acting as a kind of ombudsman, discussing informally with plaintiff and opposing counsel plaintiff's medical problems at the prison. At one point a lawyer for defendants recounted to the magistrate judge the results of an investigation by one of his paralegals. Tr. of Sept. 1, 1989, p. 19. All of this might be explained as simply an attempt to clarify issues, to get each side to outline its legal contentions and what it would seek to prove at trial. The magistrate judge never gave such an explanation for what was going on, however, and it seems more likely that he was simply gathering evidence—without benefit of witnesses, oath, or formal examination or cross-examination—to help him decide a motion by plaintiff for a preliminary injunction.

The shape of things became clearer at the November 8 conference before the magistrate judge. Proceedings began with the following statement by the Court:

> The purpose of the conference we set today was to enable us to set up a telephone conversation with the doctor ... at the University of Missouri ... to find out ... what's going on with respect to Mr. Gentile.

Tr. of Nov. 8, 1989, p. 2. Then, counsel for the University of Missouri came on the phone. Counsel stated that he had with him two physicians, Dr. Kirt Nichols and Dr. Ron Richmond. Counsel stated briefly the positions of the two doctors and their connection with the plaintiff. *Id.* at 3–4. Dr. Nichols then began speaking. He was not sworn. He was not questioned by his own lawyer, or by the lawyer for the defendant prison employees, but by the Court. He gave an extensive history of plaintiff's treatment. The Court then allowed plaintiff to question Dr. Nichols, but when plaintiff got into areas that the Court considered outside the knowledge of the witness, the Court interrupted him and stopped the questioning, without the necessity of an objection by counsel for the defendants.

When Dr. Nichols was through, the magistrate judge said:

> I want to state for the record that—although I don't know whether I've personally met Dr. Nichols or not. Dr. Nichols has an excellent reputation in the community in his field and I say for the benefit of the Eighth Circuit Court of Appeals should this case ever end up there.

*Id.* at 21–22. The Court then said:

> I now know what's been happening over at the University....

*Id.* at 24.

Counsel for the defendants then called Rodney Perry, a medical assistant at the Missouri State Penitentiary. Mr. Perry was sworn (unlike either of the two physicians). The transcript describes him as "plaintiff's witness," *id.* at 25, though of course he was not. Plaintiff was never asked to call any witnesses. The only witness called was by the defendants. Plaintiff was never told that he had an opportunity to call witnesses. Mr. Perry testified that he was giving plaintiff the appropriate medical supplies, and that refills were furnished regularly, as needed. Plaintiff did not dispute this. He explained that Mr. Perry was not a defendant, that Mr. Perry had been in charge of seeing that he got supplies only for a couple of weeks, and that his quarrel was with the people who had this duty, or should have performed it,

previously. Plaintiff was allowed to cross-examine Mr. Perry.

The Court then stated, referring to physicians whom plaintiff had seen, "that there's no deliberate indifference to your medical problems, that everybody is working as best they can to get them solved." *Id.* at 45. The Court further stated:

> ... I'm satisfied at least at this stage that there's no emergency problem that is being neglected and that you're getting reasonable medical care right now.

*Id.* at 48.

Later, when the magistrate judge recommended dismissal of the complaint, he relied on the physicians' unsworn statements at this hearing held on November 8, 1989. That such a procedure cannot be approved is manifest. (Indeed, at the time of the appeal in *Dowdy* we were advised that such procedures had been abandoned. We assume this remains true.) Unsworn statements cannot be used as a basis for findings of fact. If an evidentiary hearing is held, the moving party should first be asked to call witnesses or offer exhibits, followed by a similar invitation to the other side. All this is basic. What happened here seems more akin to a civil-law proceeding, in which the judge takes the initiative to determine the truth. This inquisitional method may have something to commend it, but it is not our system. In common-law countries judicial proceedings are adversarial. The judge (or jury) finds the facts on the basis of evidence properly sworn to and offered by both sides in the customary order.

### III.

This last procedural infirmity—basing the disposition of plaintiff's claims on unsworn testimony—would have required reversal had the defendants not cured the defect at the district-court level. Accompanying their motion for summary judgment, the defendants submitted the affidavits of Doctors Nichols and Richmond. These affidavits affirmed their unsworn testimony at the November hearing. Therefore, the District Court's adoption of the magistrate judge's findings of fact was not based on unsworn testimony. This factual base, combined with defendant's motion for summary judgment, placed the burden on plaintiff to make a showing of specific factual issues for trial. See Fed.R.Civ.P. 56(e). Failure to do so may result in an adverse judgment. *Id.; Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). That is the case here. Because the plaintiff did not come forward with enough specific facts to support his deliberate indifference claim, summary judgment was proper.

Affirmed.